IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    ) Case Number: 8:22-cr-0380-PX
          vs.                       )
                                    )
JASON MICHAEL LEIDEL,               )
                                    )
          Defendant.                )


TRANSCRIPT OF PROCEEDINGS - DETENTION HEARING
BEFORE THE HONORABLE PAULA XINIS
UNITED STATES DISTRICT JUDGE
MONDAY, JANUARY 9, 2023; 9:00 A.M.
GREENBELT, MARYLAND

A P P E A R A N C E S

FOR THE PLAINTIFF:

     OFFICE OF THE UNITED STATES ATTORNEY
          BY:   THOMAS M. SULLIVAN, ESQUIRE
          (301) 344-0173
          thomas.sullivan@usdoj.gov

FOR THE DEFENDANT:

     LAW OFFICES OF GARY E. PROCTOR, LLC
          BY:   GARY E. PROCTOR, ESQUIRE
          (410) 444-1500
          garyeproctor@gmail.com


ALSO PRESENT: Irma Dasovic - U.S. Probation Office


     ***Proceedings Recorded by Mechanical Stenography***
     Transcript Produced By Computer-Aided Transcription

---

MARLENE KERR, RPR, RMR, CRR, FCRR
FEDERAL OFFICIAL COURT REPORTER
6500 CHERRYWOOD LANE, STE 200
GREENBELT, MARYLAND 20770
(301)344-3499

P R O C E E D I N G S

(Call to Order of the Court.)

THE COURTROOM DEPUTY:  All rise.

The United States District Court for the District of Maryland is now in session, the Honorable Paula Xinis presiding.

THE COURT:  Good morning, everyone.

(Counsel reply, "Good morning, Your Honor.")

THE COURT:  You all can have a seat.

Would the government call the case.

MR. SULLIVAN:  Calling the case of United States of America against Jason Michael Leidel, Case PX-22-380.  We're here today for continuation of a detention hearing.

Thomas Sullivan for the United States.  Good morning, Your Honor.

MR. PROCTOR:  Good morning, Judge.  Gary Proctor with Mr. Leidel who is seated to my left.  How are you?

THE COURT:  Good.  How are you?

MR. PROCTOR:  Good.  Monday morning; I'm back to the beat.

THE COURT:  Okay.

So in between the last hearing and today, I did receive the affidavits of Mr. and Mrs. Leidel.  I very much appreciate it.  They're both in the courtroom, and they are both nodding in agreement that these are their signatures.  They had them

authorized, notarized.

You've reviewed the affidavits thoroughly, and so I do accept your representations. And I do note, again, for the record, that there is certainly teeth in those because they are made under penalty of perjury.

As we discussed the last time we were in court, this additional condition, along with all the other facts and circumstances of this case, do give me comfort that there are reasonable conditions of release that will reasonably assure not only appearance in court but safety of the community, as we discussed. I don't think there is any need to go over all of that again.

I've already signed a release order. So but let me check in with you, Ms. Dasovic. Since Mr. Leidel is going to be supervised out of Pennsylvania, my intention is to release him this morning to the custody of his parents to go over with your office the terms and conditions and then send him on his way home.

Is it your understanding that Pennsylvania is ready to install the equipment?

MS. DASOVIC: They are, Your Honor. It's going to take them about five hours to get home --

THE COURT: Yep.

MS. DASOVIC: -- and after he gets processed by the marshals and pretrial.

THE COURT:  Okay.

MS. DASOVIC:  So they might have to do it tomorrow morning but -- if that's all right with Your Honor.

And the defendant and his parents should have the understanding that once they get home today, he's to remain home and not leave for any reason.

THE COURT:  And certainly the pretrial office can monitor that through calling --

MS. DASOVIC:  Correct.

THE COURT:  -- the home.

MS. DASOVIC:  And home visits as well.

THE COURT:  Has there been a landline installed?

MR. PROCTOR:  There has, yes.

THE COURT:  Okay, great.  And we have that number?

MS. DASOVIC:  Yes.

THE COURT:  Okay.  So let's get this process on the road so you all can get home and Pennsylvania can do its job.

Are there any questions or concerns for me?

MR. SULLIVAN:  Just briefly, Your Honor.  I was looking at Section (k).  It talks about avoiding contact with codefendants.

THE COURT:  Yes.

MR. SULLIVAN:  The only concern I would have is should the defendant, through his counsel and counsel for any other codefendants who've been charged, want to have a meeting,

I'm just concerned that that might affect their ability to have a joint defense agreement or to communicate.

THE COURT:  What does the -- what is the actual language?  Is it the standard language?

MR. SULLIVAN:  It's the standard language.  Sometimes I've seen "except in the presence of counsel."  So that way if they want to actually have a defense or meet --

THE COURT:  Right.

MR. SULLIVAN:  -- that allows that to happen.

THE COURT:  Okay.  So we already have the release order out.  Let it be known that this contemplates only defendant-to-defendant contact, that it does not reach counsel, so that counsel can speak freely on behalf of each other's clients, and that would not violate the condition.

Is that understood?

MR. PROCTOR:  Yes, ma'am.  And that's fine with the defense.  Thank you.

THE COURT:  Okay.

Mr. Leidel, now, you've had an opportunity to go over all of the conditions of release, correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And discuss them with your counsel?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you have any questions that you need answered before you get released today?

THE DEFENDANT:  No, ma'am.  I do not.

THE COURT:  All right.  Then I assume you understand every single one of the instructions.  You agree to abide by them.

And, you know, the bottom line is go home, spend time with your family, mom and dad, and do not get on the Internet in any form, shape, or fashion.  Got it?

THE DEFENDANT:  Yes, ma'am.  I understand.

THE COURT:  Okay.

MR. PROCTOR:  Your Honor, my client has a military ID, which he needs in order to fill his prescriptions --

THE COURT:  Okay.

MR. PROCTOR:  -- through the V.A., and it expires -- next month?  He's nodding.

THE COURT:  Okay.

MR. PROCTOR:  So at some point, I'll file a motion with the Court, figure out where the closest one to Scranton is that can print him an ID.

THE COURT:  Okay.

MR. PROCTOR:  I'll file a motion with the Court telling you who's taking him, who's bringing him back, where he's going, what time, that sort of thing so --

THE COURT:  Does he have the current military ID?

MR. PROCTOR:  He does but it expires --

THE COURT:  Right.  Okay.

MR. PROCTOR:  -- and he can't fill a prescription without a valid, current military ID.

THE COURT:  I just wanted to make sure you didn't have another step, which is to get -- like, I didn't know if the ID was seized or something.

MR. PROCTOR:  No.  He has that.

THE COURT:  Okay.  All right.  So I should be expecting that motion.

MR. PROCTOR:  Just as soon as we can figure out the logistics --

THE COURT:  Okay.

MR. PROCTOR:  -- of how it's going to happen.

THE COURT:  Very good.  All right.

MR. PROCTOR:  That's all I have.  Thank you.

THE COURT:  All right.  Thank you all.  I appreciate it.  Get home safely.

THE COURTROOM DEPUTY:  All rise.

This Honorable Court now stands adjourned.

(The proceedings were adjourned at 9:14 A.M.)

I, Marlene Kerr, FCRR, RPR, CRR, RMR, certify that the foregoing is a correct transcript of the stenographic record of proceedings in the above-entitled matter.

Dated this 28th day of July, 2023.

/s/
Marlene Kerr
Federal Official Court Reporter